IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHYRL CASS, | CASE NO. 1:04cv5210 TAG |
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | ORDER REMANDING CASE PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT |
| Defendant. | |

Plaintiff Shyrl Cass ("claimant" or "plaintiff") seeks judicial review of an administrative decision denying her claim for disability benefits under the Social Security Act ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed her complaint on January 30, 2004, and her opening brief on January 3, 2005. The Commissioner filed her opposition to the appeal on March 3, 2005. Claimant did not file a reply brief in this case.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated October 7, 2004, this action was assigned to the United States Magistrate Judge for all further proceedings.

1

**JURISDICTION**

On September 7, 1994, claimant applied for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") alleging disability since April 1, 1994. (Administrative Record ("AR") 73-76, 95-97). Claimant's applications were denied initially and on reconsideration and, on January 31, 1997, an administrative law judge found that claimant was not disabled. (AR 13-22). The administrative law judge's decision became the final decision of the Commissioner, which was appealable to the district court pursuant to 42 U.S.C. § 405(g), when the Appeals Council denied a request for review on August 6, 1998. (AR 4-7). Claimant thereafter appealed to the district court pursuant to 42 U.S.C. § 405(g). On April 27, 1999, pursuant to a stipulation of the parties, the case was remanded to the Commissioner for further administrative action. (AR 423-425).

On August 17, 1999, claimant appeared before administrative law judge James P. Berry ( "ALJ"), who heard testimony solely from claimant. (AR 358-405). On January 27, 2000, the hearing was reconvened to take additional testimony from Mr. Thomas Dachelet, a vocational expert. (AR 406-420). On March 21, 2000, the ALJ issued a decision finding that claimant was not disabled. (AR 336-343). The Appeals Council denied a request for review on December 5, 2003. (AR 320-322). Therefore, the ALJ's decision became the final decision of the Commissioner, and claimant subsequently filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of claimant and the Commissioner, and will only be summarized here. Claimant was born on September 1, 1948, making her 51 years old at the time of the ALJ's decision. (AR 362, 343). Claimant testified that she completed high school and took some bookkeeping classes at a community college in Ventura, California. (AR 363). Claimant indicated that she last worked in the summer of 1993. (AR 363). She had worked for a year and a half as a sales assistant in the sales office of a produce company doing bookkeeping, billing and answering phones. (AR 364). She indicated that she stopped working because the produce company was having financial difficulty and closed its sales office. (AR 364). Prior to that position, from 1974 to 1990, claimant worked for

2

1 three different fish processing plants doing bookkeeping, office management, payroll and shipping
2 and billing duties. (AR 364-365).

3   At the August 17, 1999 administrative hearing, claimant indicated she was diagnosed with
4 chronic fatigue syndrome, depression and anxiety. (AR 366-367). She testified that she was unable
5 to work because of "overwhelming fatigue" that is made worse by exerting herself physically or
6 mentally, as well as symptoms from depression and anxiety. (AR 366-367). Claimant testified that
7 her symptoms consist of difficulty concentrating and staying focused. (AR 366-367, 370). She
8 explained that her chronic fatigue syndrome results in an overwhelming fatigue that is more than just
9 tiredness, a lack of energy, and not feeling refreshed after sleeping. (AR 369). She indicated that
10 she has body aches and joint and muscle pain as well. (AR 369-370). In addition to problems with
11 concentrating and staying focused, claimant testified that her depression and anxiety result in
12 difficulty sleeping, an inability to cope with the stresses of daily living and increased irritability.
13 (AR 370, 378-379).

14   Claimant testified that, although it varied from day to day, on a good day she could stand
15 continually, for one-half hour and, on a bad day, she could do so for five to ten minutes. (AR 383-
16 384). She stated that she could walk from room to room in her home, or what is normally required at
17 home, on a good day. (AR 384-385). She indicated that she could lift 10 pounds, but would have
18 difficulty carrying that weight any length of time. (AR 385). Claimant stated that she has problems
19 with sitting for a period of time and indicated that, on a very good day, she could sit continually for
20 two hours. (AR 386). She testified that she has no problems dressing herself or with using her
21 hands and arms to pick up keys from a desk or open a car door or normal door. (AR 386). Claimant
22 indicated that she does very little cooking, does her own laundry, shops for groceries with a
23 companion, attends church and goes to doctor appointments. (AR 387-388).

24   At the January 27, 2000 supplemental administrative hearing, the ALJ heard the testimony of
25 vocational expert Thomas C. Dachelet. (AR 406-420). Regarding claimant's past relevant work,
26 Mr. Dachelet indicated that her position as a sales assistant was a light exertional, semi-skilled job,
27 her position as a bookkeeper office manager was a sedentary exertional, skilled position and her
28 position as a payroll clerk was a sedentary exertional, semi-skilled position. (AR 409). The ALJ

asked Mr. Dachelet if there were jobs available for an individual with claimant's age, education, and work experience combined with the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, to stand and walk six hours and sit six to eight hours in an eight-hour workday and with no restrictions in activities of daily living, no difficulties in maintaining social functioning, seldom having deficiencies of concentration, persistence or pace, and one or two episodes of deterioration or decompensation in work or work-like settings over a seven year period. (AR 410). Given this hypothetical, Mr. Dachelet stated 'replied that the individual could perform all of claimant's past relevant work. (AR 410-411).

On cross-examination, Mr. Dachelet testified there would be no work available in the national economy for an individual with claimant's age, education, and work experience, combined with the following attributes: (1) difficulty with concentration and attention, making it difficult to focus on tasks for even a short period, recent recall is poor, making it significantly difficult to remember and carry out even simple job instructions, chronic tiredness and fatigue, making her unable to stand the stress and pressures of a full day's work, and withdrawn and isolated, making it difficult to handle public contact or interaction with employees and co-workers; (2) not able to maintain concentration or attention on a regular basis for at least two-hour increments, could deal with the public only on an intermittent basis and not over an extended period of time, cannot withstand the stress and pressures of an eight-hour workday and day-to-day activities, difficulty being around other people for extended periods, and would be able to understand, remember and carry out simple one or two-step job instructions if not interrupted; (3) could not sustain an eight hour workday even one or two days per week, not able to perform her housework or shopping, has debilitating anxiety and depression and marked difficulty with memory and concentration; (4) only capable of lifting and carrying occasionally less than 10 pounds, frequently lifting and carrying less than 10 pounds, standing and walking less than two hours, sitting less than six hours, and postural limitations on climbing, stooping, kneeling, pushing, balancing, crouching, crawling and pulling; (5) only capable of lifting and carrying 10 pounds occasionally and less than 10 pounds frequently, standing two to four hours, sitting less than six hours, and postural limitations in climbing, stooping, pushing, balancing, crouching, crawling and pulling; (6) not able to maintain concentration and

1  attention for two hour increments and could only sustain concentration and attention for one hour or
2  less; (7) not able to perform any manual labor and not able to perform any sedentary labor; (8) must
3  rest many hours or days to recuperate from minimal activities and suffers from a lack of
4  concentration, an inability to perform repetitive, simple, cognitive tasks and an inability to reproduce
5  the same sort of work over and over again; (9) only capable of lifting and carrying 10 pounds
6  occasionally and less than 10 pounds frequently, standing less than two hours, sitting less than six
7  hours, and postural limitations on climbing, stooping, kneeling, pushing, crouching, crawling and
8  pulling; and (10) ability to maintain concentration and attention for at least two-hour increments is
9  impaired, could only sustain concentration and attention for less than two hours, and unable to
10 withstand the stress and pressures associated with an eight-hour workday and day-to-day work
11 activities. (AR 411-420).

12      However, with regard to claimant's attorney's final hypothetical, Mr. Dachelet testified the
13 individual would be able to perform claimant's past relevant sedentary work as an office manager
14 and work as a payroll clerk, as performed in the national economy, if the individual had claimant's
15 age, education, and work experience, combined with only being capable of lifting and carrying 10
16 pounds occasionally and less than 10 pounds frequently, standing or walking less than two hours,
17 sitting six hours, and postural limitations on climbing, stooping, kneeling, pushing, crouching,
18 crawling and pulling and upper arm or extremity tenderness. (AR 417-418).

19                          **SEQUENTIAL EVALUATION PROCESS**

20      The Social Security Act defines "disability" as the "inability to engage in any substantial
21 gainful activity by reason of any medically determinable physical or mental impairment which can be
22 expected to result in death or which has lasted or can be expected to last for a continuous period of
23 not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides
24 that a claimant shall be determined to be under a disability only if her impairments are of such
25 severity that claimant is not only unable to do her previous work but cannot, considering claimant's
26 age, education and work experiences, engage in any other substantial gainful work which exists in
27 the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
28 ///

1        The Commissioner has established a five-step sequential evaluation process for determining
2  whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is
3  engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b),
4  416.920(b). If she is not, the decision maker proceeds to step two, which determines whether
5  claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§
6  404.1520(c), 416.920(c).

7        If claimant does not have a severe impairment or combination of impairments, the disability
8  claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which
9  compares claimant's impairment with a number of listed impairments acknowledged by the
10 Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d),
11 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed
12 impairments, claimant is conclusively presumed to be disabled. If the impairment is not one
13 conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines
14 whether the impairment prevents claimant from performing work she has performed in the past. If
15 claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e),
16 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines
17 whether she is able to perform other work in the national economy in view of her age, education and
18 work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See, Bowen v. Yuckert, 482 U.S. 137
19 (1987).

20        The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement
21 to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is
22 met once a claimant establishes that a physical or mental impairment prevents her from engaging in
23 her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant
24 can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the
25 national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir.
26 1984).
27 ///
28 ///

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).

Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in the evidence. Richardson, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that claimant has not engaged in substantial gainful activity since her alleged onset date. (AR 342). At step two, the ALJ determined that claimant has the severe impairments of chronic fatigue syndrome and a depressive disorder, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 337). The ALJ found that claimant's subjective complaints were only partially credible as her activities of daily living suggest that she was more functional than alleged. (AR 341).

The ALJ determined that claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours per day and sit six to eight hours per day. (AR 341). The ALJ further concluded that claimant has no restrictions of her activities of daily living or social functioning, seldom has deficiencies of concentration, persistence or pace and there is evidence of one or two episodes of decompensation or deterioration. (AR 341).

Based on claimant's residual functional capacity, and vocational expert testimony, the ALJ found that claimant could perform her past relevant work as a sales representative, bookkeeper/manager and payroll clerk. (AR 341). Accordingly, at step four of the sequential evaluation process, the ALJ found that claimant was not disabled within the meaning of the Social Security Act. (AR 341-343).

## ISSUES

Claimant contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1. The ALJ erred by failing to submit claimant's requested interrogatory to the medical expert, David G. Brown, M.D.;

2. The ALJ's step four determination is erroneous because the ALJ failed to assess claimant's mental residual functional capacity, failed to question the vocational expert about the limitations derived from claimant's severe mental impairment, and failed to determine the mental demands of claimant's past relevant work; and

3. The ALJ erred by rejecting the opinions of examining and treating medical professionals in favor of the opinion of a non-examining medical expert.

1  This court must uphold the Commissioner's determination that claimant is not disabled if the
2  Commissioner applied the proper legal standards and there is substantial evidence in the record as a
3  whole to support the decision.

## DISCUSSION

5  Claimant explicitly indicates that she does not dispute the ALJ's evaluation of the medical
6  evidence that relates to exertional work-related functioning, the result of her chronic fatigue
7  syndrome. (Court Doc. 15, p. 3). Accordingly, claimant's contentions herein pertain only to the
8  ALJ's findings and development of the record regarding claimant's mental work-related functioning,
9  the result of her depressive disorder and chronic fatigue syndrome. (Court Doc. 15, p. 3).

### A. Interrogatory Request to Medical Expert

Claimant asserts that the ALJ erred by failing to submit claimant's requested interrogatory regarding her mental functioning to the medical expert, David G. Brown, M.D. (Court Doc. 15, pp. 10-11). The Commissioner contends that Dr. Brown's report answered claimant's interrogatory request regarding possible mental deficiencies. (Court Doc. 19, pp. 5-6).

Instead of calling medical expert Brown as a witness to be cross-examined at the administrative hearings, the ALJ chose instead to submit interrogatory requests to Dr. Brown. (AR 528). In addition to the ALJ's list of interrogatories, claimant requested two interrogatories, the second of which specifically addressed claimant's mental impairments and resultant functional limitations.[1] (AR 529). Although the ALJ included claimant's first interrogatory regarding any perceived side-effects from claimant's medications, and interrogatories pertaining to claimant's medical impairments and resultant limitations, the ALJ did not precisely include claimant's second interrogatory request which specifically addressed claimant's mental functioning. (AR 529, 536).

Dr. Brown reviewed the record and indicated that claimant's impairments, as exhibited by the evidence of record, consisted of chronic fatigue syndrome and depressional illness. (AR 531, 535). Dr. Brown opined that claimant's medical condition resulted in functional limitations in the workplace such that claimant could only occasionally lift 20 pounds, frequently lift 10 pounds, stand

---

[1] Claimant's second requested interrogatory stated as follows: "If in your opinion the claimant's mental impairments if any, would cause any functional limitations? If so, please identify said limitations. (AR 529).

9

and/or walk six hours and sit without restriction. (AR 532, 536). However, Dr. Brown made no findings regarding any limitations claimant may have in light of her diagnosed "depressional illness." The Commissioner argues that since Dr. Brown declined to include any limitations with regard to depression in his report, even though he had the opportunity to do so, Dr. Brown's report sufficiently answered claimant's interrogatory regarding mental limitations. (Court Doc. 19, pp. 5-6). The undersigned does not agree.

Claimant should have been permitted to secure information from medical expert Dr. Brown regarding claimant's mental functioning. Since claimant's exact interrogatory request, or any other interrogatory specifically addressing claimant's mental functioning, was not presented to Dr. Brown, claimant was not able to obtain an answer to the specific question addressing her mental limitations. By denying claimant the right to question the medical expert in this regard, the ALJ denied claimant the right to a full and fair hearing.

**B. Medical Professional Opinions**

Claimant argues that the ALJ failed to show the appropriate degree of deference to the opinions of claimant's examining physicians, Thomas R. Callahan, M.D., and Maximo A. Parayno, Jr., M.D., and claimant's treating physician, C. M. Lewis, M.D. (Court. Doc. 15, pp. 14-15).

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant ("examining physicians") and physicians who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 839 (9th Cir. 1996). A treating physician's opinion is given special weight because of his familiarity with the claimant and her physical condition. Fair v. Bowen, 885 F.2d 597, 604-605 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. Lester, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted); see, also 20 C.F.R. § 404.1527.

In order to reject the ultimate conclusions of a treating physician, the ALJ must supply "clear and convincing" reasons. Fair, 885 F.2d at 604-605. Where a treating physician's opinion is contradicted by another physician, the ALJ may reject the treating physician's opinion only if he

10

provides "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Historically, the courts of the Ninth Circuit have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports that are based substantially on the claimant's subjective complaints of pain as specific legitimate reasons for disregarding a treating or examining physician's opinion. Flaten, 44 F.3d at 1463-64; Fair, 885 F.2d at 604.

The ALJ, in assessing the evidence and reaching a residual functional capacity assessment in this case, accorded great weight to the opinions of nonexamining physician David G. Brown, M.D. (AR 338-341, 530-533). The ALJ also relied on the opinion of consultative examining physician Rustom F. Damania, M.D. (AR 338-341, 146-149). By relying on these medical professionals, the ALJ additionally rejected the opinions of claimant's treating and examining physicians regarding claimant's mental impairments.

On November 23, 1994, Dr. Damania consultatively examined claimant. (AR 146-149). She reported that claimant complained of constantly being tired, weak and fatigued. (AR 146). Claimant also complained of constant headaches, insomnia, depression and anxiety. (AR 146). As a result of these symptoms, claimant related to Dr. Damania that she has difficulty concentrating and focusing and has short term memory loss. (AR 146). Dr. Damania concluded that claimant's physical examination was normal and she was able to sit, stand, walk and move about, carry and handle objects, hear, speak and travel. (AR 149). She additionally found that claimant's mental status was normal and claimant was awake, alert, cooperative, answered all questions, was very pleasant, well dressed and had good memory. (AR 149). Dr. Damania filled out a medical source statement indicating that claimant could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand and/or walk six hours and sit continuously, with breaks every two hours, without restriction. (AR 150). Dr. Damania specifically found no gross mental impairments. (AR 149).

On October 20, 1999, Dr. Brown, a reviewing, nonexamining rheumatologist, submitted answers in response to the ALJ's interrogatory requests. (AR 530-533). Dr. Brown indicated that claimant's impairments, as exhibited by the evidence of record, consisted of chronic fatigue

11

1  syndrome and depressional illness. (AR 531, 535). However, Dr. Brown opined that claimant's
2  medical conditions did not meet or equal in severity any of the Listings impairments at that time.
3  (AR 531). He indicated that claimant's medical condition resulted in functional limitations in the
4  workplace such that claimant could only occasionally lift 20 pounds, frequently lift 10 pounds, stand
5  and/or walk six hours and sit without restriction. (AR 532, 536). Dr. Brown made no findings
6  regarding any limitations claimant may have in light of her diagnosed "depressional illness."
7  Dr. Brown opined that claimant's limitations commenced in April of 1994 and were ongoing at the
8  time of his review of the record. (AR 532, 536).

9         The ALJ adopted Dr. Brown's findings, which he found were consistent with examining
10 physician Damania, to find that claimant retains the residual functional capacity to lift and carry 20
11 pounds occasionally and 10 pounds frequently, stand and/or walk six hours per day and sit six to
12 eight hours per day. (AR 341). Regarding claimant's mental functioning, the ALJ additionally
13 found that claimant has no restrictions of her activities of daily living or social functioning, seldom
14 has deficiencies of concentration, persistence or pace and there is evidence of one or two episodes of
15 decompensation or deterioration. (AR 341). The ALJ's finding regarding claimant's mental
16 functioning is consistent only with Dr. Damania's finding of no gross mental impairments (AR 149),
17 but is unsupported by any other medical reports of record.[2] Accordingly, the ALJ's finding regarding
18 claimant's mental functioning is not supported by substantial evidence and is, in fact, inconsistent
19 with the weight of the record evidence.

20        On July 20, 1999, Dr. Parayno performed a consultative psychiatric evaluation of claimant.
21 (AR 524-527). Claimant complained of poor concentration, poor memory, feeling tired and fatigued,
22 dizziness, anxiety and depression. (AR 524). Claimant indicated that in 1994 she began feeling very
23 depressed, had low energy with poor appetite, lost weight, lost interest, suffered from insomnia and
24 had feelings of hopelessness, worthlessness and helplessness. (AR 524-525). Results of the mental
25 status exam revealed that claimant coherently responded in a delayed manner answering in soft
26 monotones, her mood was depressed, her affect was flat, she had poor concentration and attention

---

[2] As acknowledged by the Commissioner, "Dr. Brown declined to include any limitations with regard to depression in his report." (Court Doc. 19, p. 6).

span and her judgement and insight were poor. (AR 525-526). Dr. Parayno diagnosed major depression, recurrent, and chronic fatigue syndrome and gave claimant a global assessment of functioning ("GAF") score of 30.[3] (AR 526). He opined that claimant's social judgment was poor, her activities of daily living were "definitely restricted," and she "depends on her family . . . for providing her basic needs of food, clothing and shelter." (AR 526). Dr. Parayno found that claimant has difficulty with her concentration and attention span "which makes it difficult for her to focus on tasks even for short periods of time," she would have difficulty remembering and carrying out even simple job instructions, she would be unable to stand the stress and pressure of a full day's work, and it would be difficult for her to handle public contact or to interact with employers and coworkers. (AR 527). He opined that claimant is "disabled and unable to engage in any substantial gainful activity." (AR 527).

On July 29, 1999, Dr. Callahan performed a consultative psychiatric examination of claimant. (AR 521-523). Claimant's chief complaints were of recurrent headaches, muscular weakness, difficulty concentrating, short-term memory loss, nausea, joint and muscle pain and post-exertional fatigue. (AR 521). Dr. Callahan noted that claimant was "no longer depressed since taking Zoloft at 50 mg each morning." (AR 522). The mental status exam revealed that, other than her cognitive and muscular fatigue limitations, claimant appeared to be psychiatrically intact. (AR 523). Nevertheless, Dr. Callahan noted that claimant had been afflicted with chronic fatigue syndrome "to a disabling extent" since 1993 and that prescribed medications were of assistance but did not free her from the disabling symptoms. (AR 523). Dr. Callahan diagnosed chronic fatigue syndrome, indicated there was a significant level of stress as a result of claimant's loss of ability to live and work independently and gave claimant a GAF score of 50.[4] (AR 523).

///

---

[3] A GAF of 30-21 is characterized as: "[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. rev. 1987).

[4] A GAF of 50-41 reflects: "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS-IV 32 (4th ed. 1994).

1    Claimant's treating physician, C.M. Lewis, M.D., filled out a Medical Source Statement on
2 November 18, 1995. (AR 178-181). Dr. Lewis opined that claimant could lift and carry 10 pounds
3 occasionally and less than 10 pounds frequently, stand and/or walk less than two hours during an
4 eight hour workday and sit continuously for less than six hours during an eight hour day. (AR 178).
5 He further opined that claimant would have postural limits on climbing, stooping, kneeling, pushing,
6 pulling, crouching and crawling. (AR 179). He noted that claimant had difficulty concentrating,
7 short term memory loss and difficulty focusing and maintaining attention. (AR 179). Dr. Lewis
8 further indicated that claimant had a poor memory, was irritable and forgetful, and was unable to
9 withstand job pressures for eight hours. (AR 180).

10    The ALJ rejected Dr. Lewis' finding that claimant was unable to work on a psychiatric basis
11 because there was "no evidence that he performed a mental status exam and it is believed that he is a
12 general practitioner, rather than a psychiatrist." (AR 341). However, as claimant's treating
13 physician, Dr. Lewis provided claimant treatment and prescribed medication for her diagnosed
14 psychiatric problems. As noted above, a treating physician's opinion is given special weight because
15 of his familiarity with the claimant and her physical condition. Fair, 885 F.2d at 604-605. The
16 ALJ's rationale for rejecting Dr. Lewis' opinion is not legitimate. Moreover, the ALJ rejected the
17 findings of examiners Drs. Parayno and Callahan because their GAF scores were inconsistent and
18 because claimant was capable of reciting her past history without difficulty and able to compose
19 lengthy documents to support her position in this case, inconsistent with their findings regarding her
20 attention and concentration. (AR 341). Although the undersigned agrees that Dr. Parayno's GAF
21 score of 30 appears more severe than the weight of the record evidence would indicate,
22 Dr. Parayno's findings regarding claimant's mental limitations are in accord with the substantial
23 weight of the record evidence, including the opinions of Drs. Callahan and Lewis. The GAF score of
24 50, as determined by Dr. Callahan, is more consistent with the weight of the record, including the
25 opinions of Drs. Parayno and Lewis. In any event, contrary to the Commissioner's argument, it was
26 erroneous for the ALJ to reject these treating and examining physicians' opinions based on
27 ///
28 ///

14

Dr. Damania's one-time examination, that found no gross mental impairments, and reviewing physician Brown's disinclination to include any limitations with regard to claimant's diagnosed depressional illness in his report. (Court Doc. 19, pp. 7-9).

Based on the foregoing, the ALJ's failed to give sufficient reasons for rejecting the opinions of Drs. Parayno, Callahan and Lewis. When the Commissioner fails to provide adequate reasons for rejecting the opinions of a treating or examining physician, that physician's opinions are credited as a matter of law. Lester, 81 F.3d at 834. Accordingly, the opinions of Drs. Parayno, Callahan and Lewis regarding claimant's mental limitations are credited. As a result of erroneously rejecting the opinions of claimant's treating and examining physicians, the ALJ's conclusion regarding claimant's mental functioning is additionally not supported by substantial evidence in this case.

The court has the discretion to remand the case for additional evidence and finding or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. Id. Remand for the payment of benefits is required where "(1) the ALJ . . . failed to provide legally sufficient reasons for rejecting [the] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the evidence that the ALJ would be required to find the claimant disabled were such evidence credited." Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).

In this case, it is apparent that the ALJ failed to give clear and convincing reasons, or even specific and legitimate reasons, for rejecting the opinions of Drs. Parayno, Callahan and Lewis. Although a review of the record reveals that claimant is more limited than as ascertained by the ALJ, the issue of whether claimant is capable of performing her past relevant work or other work in the national economy remains unresolved. Therefore, the undersigned judicial officer concludes that further development is necessary for a proper determination to be made in this case. A redetermination of claimant's mental residual functional capacity should be performed on remand which takes into consideration the credited opinions of Drs. Parayno, Callahan and Lewis. In

///

///

addition, the ALJ shall fully and fairly develop the record regarding claimant's mental limitations by procuring supplemental medical consultant information and by eliciting the services of a medical expert to give testimony at a new administrative hearing. Claimant may also present additional evidence, if any, as to claimant's mental disabilities.

**C. Disability Determination**

Claimant argues that the ALJ's step four determination in this case is erroneous because the ALJ failed to assess claimant's mental residual functional capacity, failed to question the vocational expert about the limitations derived from claimant's severe mental impairment, and failed to determine the mental demands of claimant's past relevant work. (Court Doc. 15, pp. 11-15).

Social Security Ruling ("SSR") 82-61 provides that, pursuant to 20 C.F.R. § 404.1520(e) and § 416.920(e), a claimant will be found not disabled when it is determined that she retains the residual functional capacity ("RFC") to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. RFC is defined as "what an individual can still do despite his or her limitations." SSR 96-8p.

Claimant's RFC is not a medical issue, rather it is an administrative finding, dispositive of the case, which is reserved to the Commissioner, and by delegation of authority, to the ALJ. SSR 96-5p. It is thus the ALJ's responsibility to make an RFC determination. However, in making an RFC determination, the ALJ must consider the whole record and explain how he weighs the medical evidence and testimony. SSR 96-8p.

As noted above, the ALJ's conclusion regarding claimant's mental functioning is not supported by substantial evidence in this case. Supra. Therefore, on remand, the ALJ shall make a redetermination of claimant's mental RFC. In addition, claimant's newly assessed mental RFC shall be presented to a vocational expert, at a new hearing, in order to determine if claimant is capable of performing her past relevant work or any other jobs available in the national economy, despite her physical and mental impairments and limitations. With regard to claimant's past relevant work, the ALJ, with the assistance of the vocational expert, shall make an explicit determination as to the

///

physical and mental demands of claimant's past relevant work and conclude whether claimant is able to perform the physical and mental duties of her past relevant work despite her impairments and limitations.

## CONCLUSION

Claimant argues that the ALJ's errors should result in this Court reversing the ALJ's decision and awarding benefits. The Court has the discretion to remand the case for additional evidence and finding or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand is appropriate when additional administrative proceedings could remedy defects. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989). In this case, further development is necessary for a proper determination to be made.

A redetermination of claimant's mental RFC should be performed on remand which takes into consideration the credited opinions of Drs. Parayno, Callahan and Lewis. In addition, the ALJ shall fully and fairly develop the record regarding claimant's mental limitations by procuring supplemental medical consultant information and by eliciting the services of a medical expert to give testimony at a new administrative hearing. In addition, claimant's newly assessed mental RFC shall be presented to a vocational expert, at a new hearing, in order to determine if claimant is capable of performing her past relevant work or any other jobs available in the national economy, despite her physical and mental impairments and limitations. The ALJ, with the assistance of the vocational expert, shall make a finding regarding the physical and mental demands of claimant's past relevant work and conclude whether claimant is able to perform the physical and mental duties of her past relevant work, despite her impairments and limitations. Finally, the ALJ shall also take into consideration any other evidence or testimony relevant to claimant's disability claim.

For the reasons outlined above, the undersigned concludes that the Commissioner's decision to deny claimant disability benefits was not supported by substantial evidence in the record and was not based upon the proper legal standards.

///

Accordingly, it IS ORDERED that

1. Claimant's social security complaint IS GRANTED;

2. The matter IS REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for development of the record and further consideration, consistent with this decision, of claimant's status as disabled, including whether claimant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform claimant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and whether on the basis of claimant's age, education, work experience, and residual functional capacity, claimant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f); and

3. Judgment BE ENTERED for claimant Shyrl Cass and against defendant Jo Anne B. Barnhart.

IT IS SO ORDERED.

**Dated:   June 3, 2005**                                **/s/ Theresa A. Goldner**
j6eb3d                                                    UNITED STATES MAGISTRATE JUDGE